UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALBANY MOLECULAR RESEARCH, INC.,

                              Plaintiff,               1:17-CV-0096
                                                (GTS/CFH)

v.

WATERVILLE VALLEY TECHNOLOGIES, INC.;
and JAMES PELTIER,

                              Defendants.
_____

APPEARANCES:                                OF COUNSEL:

LeCLAIRRYAN LAW FIRM               ANDREW P. ZAPPIA, ESQ.
  Counsel for Plaintiffs                  MICHAEL L. GOLDMAN, ESQ.
70 Linden Oaks, Suite 210             CHRISTINA L. SHIFTON, ESQ.
Rochester, New York 14625

JAMES PELTIER
  Defendant, *Pro Se*
122 Manton Avenue
Providence, Rhode Island 02909

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this breach-of-contract action filed by Albany Molecular

Research, Inc. ("Plaintiff"), against Waterville Valley Technologies, Inc., ("Waterville") and

James Peltier ("Peltier") (collectively "Defendants"), are Plaintiff's motion for default judgment

against Waterville pursuant to Fed. R. Civ. P. 55(b) and Peltier's motion to dismiss pursuant to

Fed. R. Civ. P. 12(b)(6).  (Dkt. Nos. 32, 38.)  For the reasons stated below, Plaintiff's motion is

granted, and Peltier's motion is denied.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Motion for Default Judgment

#### 1.    Plaintiff's Complaint

Liberally construed, Plaintiff's Complaint asserts the following three claims against Defendants: (1) a claim of breach of contract for failure to pay against Waterville; (2) a claim of breach of contract for seeking an assignment of rights against Waterville; and (3) a claim of unjust enrichment against Peltier. (*See generally* Dkt. No. 1.)  Generally, in support of these claims, Plaintiff's Complaint alleges as follows: Peltier is the principal owner of Waterville and/or controls Waterville. (*Id.*)  On October 15, 2014, January 21, 2015, August 4, 2015, September 28, 2015, and February 2, 2016, Plaintiff and Waterville entered letter agreements pursuant to which, Plaintiff would complete work for Waterville in exchange for which, Waterville would pay Plaintiff within thirty days of when Plaintiff sent an invoice ("Letter Agreements"). (*Id.*)  In addition, the Letter Agreements provided, "Ownership of all information developed as a direct result of this project shall accrue to [Waterville] as the work is being performed and provided that [Waterville] pays all invoices submitted by [Plaintiff]." (*Id.* at ¶ 18.)  Waterville paid some of Plaintiff's invoices at the beginning of the relationship but has not paid several invoices in connection with the Letter Agreements. (*See generally Id.*)  Waterville is in arrears to Plaintiff in the amount of approximately $1,407,000.00 plus interest. (*Id.*)  Each of Plaintiff's employees has an agreement with Plaintiff, which provides that any information or invention developed by Plaintiff's employees in connection with their work for Plaintiff is owned by Plaintiff. (*Id.*)  On April 27, 2015, Waterville filed a provisional application seeking patent technologies related to work developed under the Letter Agreements. (*Id.*)  On April 27,

2016, Waterville filed a utility patent application claiming priority to the prior filed provisional patent application ("Utility Patent Application"). (*Id.*) The Utility Patent Application lists Plaintiff's employees and Peltier as inventors. (*Id.*) Plaintiff alleges that Peltier did not work on the project and therefore improperly listed himself as an inventor to give himself a personal ownership interest in the subject matter of the Utility Patent Application for his own financial gain. (*Id.*) On or about May 20, 2016, after a request from Defendants to do so, Plaintiff's employees assigned to Waterville any interests that they had in the inventions claimed in the Utility Patent Application (the "Assignment"). (*Id.*) On or about January 26, 2017, Plaintiff's employees executed a rescission of the Assignment ("Rescission Agreement") and formally documented assignment of any ownership interest they might have in the Utility Patent Application to Plaintiff. (*Id.*) The same were recorded with the United States Patent & Trademark Office ("PTO") on January 26, 2017. (*Id.*) Based on these claims, Plaintiff seeks several forms of relief including the following: (1) not less than $1,407,000.00, plus interest; (2) a declaratory judgment against Waterville; (3) rescission of the assignment; and (4) attorney's fees.

## 2.    Plaintiff's Service of Its Complaint and Waterville's Failure to Answer

On January 31, 2017, Plaintiff served its Complaint on Waterville. (Dkt. No. 5.) On March 10, 2017, Peltier filed an answer on behalf of Defendants. (Dkt. No. 8.) On March 16, 2017, by Text Order, the Court informed Peltier that corporations, such as Waterville, must be represented by an attorney. (Dkt. No. 10.) A telephone conference was held on April 3, 2017, during which the Court granted Waterville an extension until May 3, 2017, to obtain an attorney and file an answer. (Dkt. No. 15.) As of the date of this Decision and Order, Waterville has filed no Answer to that Complaint. (*See generally* Docket Sheet.)

3

### 3.    Clerk's Office's Entry of Default and Waterville's Non-Appearance

On May 19, 2017, Plaintiff filed a request for entry of default.  (Dkt. No. 23.)  On May 22, 2017, the Clerk of the Court entered default against Waterville, pursuant to Fed. R. Civ. P. 55(a).  (Dkt. No. 26.)  As of the date of this Decision and Order, Waterville has not appeared and attempted to cure that entry of default.  (*See generally* Docket Sheet.)

### 4.    Plaintiff's Motion for Default Judgment and Waterville's Non-Response

On July 14, 2017, Plaintiff filed a motion for default judgment against Waterville, pursuant to Fed. R. Civ. P. 55(b).  (Dkt. No. 32.)  As of the date of this Decision and Order, Waterville has filed no response to that motion.  (*See generally* Docket Sheet.)

Generally, in support of its motion for default judgment, Plaintiff argues as follows: (1) Waterville's default establishes its liability; (2) because Waterville did not pay for amounts due and owed for work completed by Plaintiff, Plaintiff has been damaged in the amount of $1,425,475.47 plus pre-judgment interest in the amount of $189,555.80.  (Dkt. No. 32, Attach. 1.)  Familiarity with the particular grounds for Plaintiff's motion for default judgment against Waterville is assumed in this Decision and Order, which is intended primarily for the review of the parties.

### B.    Parties' Briefing of Peltier's Motion to Dismiss

### 1.    Peltier's Memorandum of Law

Generally, in support of his motion to dismiss, Peliter argues as follows: (1) there is no basis to pierce the corporate veil and establish individual liability against him because he did not conduct any of the business activities on his own behalf or provide any personal guarantees; (2) Plaintiff has no enforceable contract for the work it allegedly performed that exceeded the scope

of the contract between Waterville and Plaintiff; (3) in another lawsuit currently pending in the

U.S. District Court for the District of New Jersey (2:17-CV-5578), Dr. John Thottathil states

that, as an employee of Waterville, he, not Peltier, initiated and supervised all work performed

by Plaintiff pursuant to a "Visiting Scientist Agreement" (rendering all work performed the

property of Waterville); and (4) in April 2015, Plaintiff was aware of funding issues at

Waterville due to third parties involved in the project, and Plaintiff opted to continue work

knowing it would not be paid. (*See generally* Dkt. No. 38 [Peltier's Mem. of Law].)

### 2.     Plaintiff's Response

Generally, in opposition to the motion to dismiss, Plaintiff argues as follows: (1) the

Complaint does not attempt to pierce the corporate veil, but rather properly states an unjust

enrichment claim against Peltier; and (2) the facts alleged in Peltier's motion are unsworn and

unsupported and do not provide a ground on which to base the dismissal of the Complaint. (*See*

*generally* Dkt. No. 41 [Pl.'s Opp'n Mem. of Law].)

### 3.     Peltier's Reply

Generally, in reply, Peltier argues as follows: (1) there is no basis for an unjust

enrichment claim against him because he did not conduct any business activities on his own

behalf; (2) all contracts were executed on behalf of Waterville; (3) Plaintiff was aware of the

funding stop and continued to work on the program knowing it was not going to be paid; (4)

Plaintiff fraudulently alleges ownership of technology that John Thottathil developed; and (5) the

contract between Plaintiff and Waterville was for labor only, not the development of new

technology. (*See generally* Dkt. No. 42 [Peltier's Reply Mem. of Law].)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Default Judgment

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." *Robertson v. Doe*, 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008). "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'" *Robertson*, 2008 WL 2519894, at *3 (quoting Fed. R. Civ. P. 55[a]). "Second, pursuant to Rule 55(b)(2), the party seeking default judgment is required to present its application for entry of judgment to the court." *Id.* "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment." *Id.* (citing Fed. R. Civ. P. 55[b][2]). "When an action presents more than one claim for relief . . . , the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties . . . if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

When a court considers a motion for the entry of a default judgment, it must "accept[ ] as true all of the factual allegations of the complaint . . . ." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted). "However, the court cannot construe the damages alleged in the complaint as true." *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds v. Catone Constr. Co., Inc.*, 08-CV-1048, 2009 WL 4730700, at *2 (N.D.N.Y. Dec. 4, 2009) (Scullin, J.) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 [2d Cir. 1999] [citations omitted]). "Rather, the court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds*, 2009 WL 4730700, at *2

6

(quoting *Alcantara*, 183 F.3d at 155 [citation omitted]).  This inquiry "involves two tasks: [1] determining the proper rule for calculating damages on such a claim, and [2] assessing plaintiff's evidence supporting the damages to be determined under this rule."  *Alcantara*, 183 F.3d at 155. Finally, in calculating damages, the court "need not agree that the alleged facts constitute a valid cause of action . . . ." *Au Bon Pain*, 653 F.2d at 65 (citation omitted).

### B.    Legal Standard Governing Motions to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has

held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[1]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

---

[1]      *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69.  Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 1965.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief."  *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted].  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement."  *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement"

will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

(citations omitted).

## III.    ANALYSIS

### A.    Plaintiff's Motion for Default Judgment

#### 1.    Liability

After carefully considering Plaintiff's unopposed motion, the Court is satisfied that,

under the circumstances, Plaintiff has met its modest threshold burden of establishing

entitlement to default judgment against Waterville on the issue of liability.[2]  The Court notes that

Plaintiff's motion would survive even the heightened scrutiny appropriate on a contested motion.

For example, for the reasons stated above in Part I of this Decision and Order, the Court finds

that due notice of this action has been given to Waterville.  However, no Answer has been filed

and no one has appeared on behalf of Waterville.  In addition, the Clerk of the Court has already

entered default against Waterville, and Plaintiff has served Waterville with its motion for the

issuance of default judgment.  (Dkt. Nos. 26, 27, 35.)  Waterville has still neither responded to

the motion nor appeared in this action.  Finally, the Court finds that the factual allegations of

---

[2]    In this District, a movant's burden with regard to an unopposed motion is lightened such that, in order to succeed, the movant need only show its entitlement to the relief requested in its motion, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases).

Plaintiff's claims against Waterville are sufficient to state a claim upon which relief can be granted. *See W.A.W. Van Limburg Stirum et al. v. Whalen et al.*, 90-CV-1279, 1993 WL 241464, at *4 (N.D.N.Y. June 29, 1993) (Munson, J.) (holding that, "[b]efore judgment can be entered, the court must determine whether plaintiff's factual allegations are sufficient to state a claim for relief . . . the court may exercise its discretion to require some proof of the facts that must be established in order to determine liability") (internal quotation marks omitted).

For each of these reasons, the Court grants Plaintiff's motion for the issuance of default judgment on the issue of liability pursuant to Fed. R. Civ. P. 55(b) as to Waterville.

### 2.    Damages

"[I]n a multi-defendant case, 'where some but not all defendants have defaulted, . . . it is [ordinarily] appropriate to enter judgment solely as to liability and not as to the amount of damages to be assessed against the defaulting party, since a separate determination of damages would pose the prospect of inconsistent judgments.'" *Harvey v. Home Savers Consulting Corp.*, 07-CV-2645, 2008 WL 724152, at *1 (E.D.N.Y. Mar. 17, 2008) (quoting *Montcalm Publ'g Corp. v. Ryan*, 807 F. Supp. 975, 978 [S.D.N.Y. 1992]). "The Court, however, has the discretion to depart from this usual rule in the interests of justice." *Johannes Baumgartner Wirtschafts und Vermogensberatung GMBH v. Salzman*, 08-CV-2582, 2010 WL 3937270, at *1 (E.D.N.Y. Sept. 30, 2010) (entering default judgment against defaulting defendants because [1] "no Defendant ha[d] . . . answered the Complaint or otherwise contested its merits[,]" [2] "Plaintiffs . . . agreed to deposit any money recovered from [the defaulting defendants] with the Court, pending th[e] litigation's final resolution[,]" [3] "the Court believe[d] that the risk of the defaulting Defendants squirreling away assets [wa]s high[,]" and [4] "Plaintiffs' motion for a partial default judgment

11

s[ought] only liquidated damages that [we]re easily calculable, while deferring consideration of other damages").

After carefully considering Plaintiff's unopposed motion, the Court is satisfied that, under the circumstances, Plaintiff has met its burden of establishing a valid basis for the statutory damages it seeks. The Court notes that, while a hearing to fix the amount of damages may be conducted,[3] a hearing is not required where the Court has found that there is a basis for the damages specified in the default judgment.[4] Here, the Court makes such a finding.

For example, in support of its damages request, Plaintiff provided, *inter alia*, the Declaration of Susan B. Billings, Ph.D.,[5] which demonstrated that Waterville is indebted to Plaintiff in the amount of $1,425,475.47 in statutory damages.

With respect to Plaintiff's request for pre-judgment interest in the amount of $189,55.80 through July 13, 2017,  the Court finds that Plaintiff has shown that it is entitled to pre-judgment interest under N.Y. C.P.L.R. 5001. Pursuant to N.Y. C.P.L.R. 5004, the interest is 9 per centum per annum. *FCS Advisors, Inc. v. Fair Finance Co.,* 605 F.3d 144 (2d Cir. 2010).

---

[3]     Fed. R. Civ. P. 55(b).

[4]     *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) (noting that "it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment"); *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (noting that it is "not necessary for the district court to hold a hearing to fix damages after a default judgment had been entered where the court had 'relied upon detailed affidavits and documentary evidence supplemented by the District Judge's personal knowledge of the record gained during four years involvement with the litigation . . .'"); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991) (concluding that, where district judge was "inundated with affidavits, evidence, and oral presentations," a full evidentiary hearing was not necessary).

[5]     (Dkt. No. 32, Attach. 1.)

Therefore, the Court concludes that Plaintiff has met its burden of establishing a valid basis for damages and pre-judgment interest, and that default judgment against Waterville, awarding Plaintiff $1,425,475.47 in damages is appropriate plus statutory interest in the amount of $189,55.80 in pre-judgment interest through July 13, 2017,[6] and $75,921.21 in pre-judgment interest pre-judgment interest from July 14, 2017, through February 15, 2018.[7]

### B.      Peltier's Motion to Dismiss

After carefully considering Peltier's motion to dismiss pursuant to Fed. R. Evid. 12(b)(6), the Court denies Peltier's motion for the reasons set forth in Plaintiff's response. *See*, *supra*, Part I. B. 2. of this Decision and Order. To those reasons, the Court would add only that, on January 8, 2018, the U.S. District Court for the District of New Jersey dimissed Dr. Thottathil's complaint in the action relied on by Plaintiff (2:17-CV-5578).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for entry of default judgment against Defendant Waterville (Dkt. No. 32) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment against Waterville in the amount of **$1,690,952.48**, calculated as follows:

---

[6]      (Dkt. No. 32, Attach. 4.)

[7]      The Court calculates prejudgment interest at the rate of 9%, with a per diem daily rate of $351.49. The interest has continued to accumulate since the date Plaintiff's motion for default judgment was filed to date, which amounts to 216 days. As such, the court calculates pre-judgment interest for those 216 days as amounting to $75,921.21.

| | |
|---|---|
| **Principal Balance:** | **$1,425,475.47** |
| **Prejudgment Interest as of 7/13/17:** | **$189,555.80** |
| **Prejudgment Interest Between 7/14/17 and 2/15/18:** | **$75,921.21** |
| **TOTAL:** | **$1,690,952.48**; |

and it is further

      **ORDERED** that Defendant Peltier's motion to dismiss (Dkt. No. 38) is **<u>DENIED</u>**; and it is further

      **ORDERED** that this case is referred back to Magistrate Judge Hummel to determine the status of discovery, given that all scheduling deadlines are expired, and whether this case is trial ready against Pro Se Defendant James Peltier.

Date:  February 15, 2018
       Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge

14